## Paul Goodwin *v.* Woodbridge Country Club, Inc., et al.

House, C. J., Loiselle, Bogdanski, Longo and Barber, Js.

Argued November 4, 1975—decision released February 10, 1976

*Irwin E. Friedman,* with whom was *Arthur Levy, Jr.,* for the appellant (named defendant) and appellee (Greater New York Mutual Insurance Company—third-party defendant).

*David M. Reilly, Jr.,* for the appellants (defendants Stone—third-party plaintiffs).

*Louis Feinmark,* with whom was *Peter A. Treffers,* for the appellee (plaintiff).

BOGDANSKI, J. These are appeals from two judgments. The plaintiff, Paul Goodwin, sought to recover damages alleged to have been caused by the negligence of the defendant Woodbridge Country Club, Inc., in its maintenance of a golf cart, and by the negligence of the defendants Benjamin and Frances Stone in the operation of that golf cart. The jury returned a verdict for the plaintiff against all defendants. From that judgment, Woodbridge alone has appealed, assigning error in the trial court's responses to questions posed by the jury, and in its finding of certain facts.[1]

---

[1] Although this appeal is taken from a jury case, it is brought under our old practice, with a finding included in the record. A finding in a jury case is simply a narrative of the facts claimed to have been proved by each side, made for the purpose of presenting claimed errors in the charge or rulings of the court. See, e.g., *Novella* v. *Hartford Accident & Indemnity Co.,* 163 Conn. 552, 566–67, 316 A.2d 394; *Wright* v. *Coe & Anderson, Inc.,* 156 Conn. 145, 149, 239

The defendants Benjamin and Frances Stone sought indemnification from the third-party defendant, the Greater New York Mutual Insurance Company. The court, concluding that the Stones were not covered by the terms of a liability insurance policy issued by the third-party defendant to Woodbridge, rendered judgment for the third-party defendant. From that judgment the Stones have appealed, assigning error in the admission of certain testimony and in the conclusions reached.

The finding in the jury case discloses that the plaintiff claimed to have proved the following facts: On July 30, 1967, the plaintiff was playing golf at the defendant club with the Stones. The plaintiff and Benjamin Stone were operating golf carts leased to them by the club. At the tenth tee, Stone parked his golf cart a short distance behind the cart of the plaintiff. When both operators alighted from their carts, the Stone cart began to roll, pinning the plaintiff against his own cart, causing the injuries alleged. The plaintiff claimed that the defendant Woodbridge was negligent in supplying the Stones with a cart having a defective foot brake, and in failing to warn Stone that the cart had no seat brake.[2]

Woodbridge claimed that the golf cart leased to Stone was customarily used by the golf pro and was driven on occasion by other employees of Wood-

A.2d 493. The defendant has attacked the finding on the ground that several paragraphs set forth conclusions of law and not subordinate facts. The finding on a whole, however, clearly presents the claims of proof necessary for proper disposition of the errors assigned, and it would serve no useful purpose to make the requested corrections. *Novella* v. *Hartford Accident & Indemnity Co.*, supra, 567.

[2] The plaintiff's claims of proof as to the negligence of the Stones are not set forth in the finding since they are immaterial to the claims raised, there being no appeal by the Stones as defendants.

bridge; that the cart was equipped with adequate brakes and was mechanically sound; that the terrain at the tenth tee was relatively level; and that Stone failed to apply the brakes when he alighted from the golf cart.

The first claimed error relates to the court's response to two questions from the jury. During the trial, the plaintiff's attorney presented a photograph taken in December, 1967, depicting the floorboard and interior of the golf cart operated by Stone on July 30, 1967. The photograph also showed a portion of a faded decal located on the dash panel, on which driving instructions appeared to be set forth. When the photograph was offered into evidence, there was no claim that it depicted the *condition* of the cart at the time of the collision, or that the decal was affixed to the cart at that time. The Stones' attorney asked if the photograph was being introduced "for the purpose of showing the mechanical equipment in the floorboard area." The plaintiff's attorney answered, "Yes." The Stones' attorney then stated that he would not object so long as it was being offered for that reason. The photograph was admitted as exhibit E. After the jury had retired to deliberate, the following questions were submitted to the court concerning exhibit E. First, "Do the operating instructions suffice on the part of the club for notification to a new driver?" Second, "Why was exhibit E not mentioned by the defense for the club showing operating instructions? We assume that these are operating instructions." The court instructed the jury that it was not for them to guess whether the decal contained instructions or what those instructions might have been, and that the decal was not a basis upon which to make a judgment in the case.

Woodbridge contends that the court's response constituted a usurpation of the function of the jury. It argues that the jury had the right to consider everything depicted on the photograph and to draw such reasonable inferences therefrom as were relevant to the issues in the case.

We do not agree. It is abundantly clear that a limitation on the purposes of the exhibit was agreed to by the plaintiff's attorney, by the attorney for the Stones, and by the court in admitting the photograph into evidence. On that ground alone, the court's ruling must stand. See 2 Scott, Photographic Evidence § 1027; 3 Scott, op. cit. §§ 1564, 1565, 1569. In addition, there was no showing that the decal was on the cart at the time of the accident. Moreover, there was no testimony concerning the contents of the writing on the decal. Our examination of the photograph reveals that it depicts only a portion of the decal and that the printing on it is faded and for the most part unreadable. Any determination that the decal set forth instructions concerning the proper method of using the brakes would have been purely speculative. The trial court's response to the jury's questions was correct and proper. See, generally, *Cagianello* v. *Hartford*, 135 Conn. 473, 66 A.2d 83; *Cunningham* v. *Fair Haven & Westville R. Co.*, 72 Conn. 244, 43 A. 1047.

Woodbridge next argues that the court erred in failing to redefine proximate cause in response to another question. The jury asked whether they could designate liability of the three defendants in different degrees in awarding damages. The court stated: "The answer to that is, for the purpose of this case, no. If you find that any defendant has committed an act of negligence as I have described

to you in the charge and that act is a proximate cause of plaintiff's injuries, then a verdict would be rendered against that defendant, and that would be true of each of these three defendants. If you find that each one of them has committed some act of negligence which is a proximate cause, together with the cause created by the other defendant or defendants, and there can be three, there can be two, there can be one, there can be none. But the simple answer to your question here is, once you find that any one of these defendants has committed an act of negligence which is a proximate cause of plaintiff's injuries, then your verdict should be in favor of the plaintiff against that defendant, without attempting to differentiate among the defendants as to whether one is 25 percent guilty of negligence or 75 percent or 50 percent, you can't distinguish. It is either all or nothing. Does that make it clear?" That statement was a proper statement of the law and an adequate response to the jury's question. There was no reason for the court to have repeated its earlier instruction concerning proximate cause.

In the third-party complaint, tried to the court, the Stones alleged that they were covered by a policy of liability insurance issued to Woodbridge by the Greater New York Mutual Insurance Company, but that the company denied coverage and refused to defend the Stones, in violation of the terms of the policy.

Paragraph three of the "Insuring Agreements" of the subject policy reads as follows: "Definition of Insured: The unqualified word 'insured' includes the named insured and also includes any executive officer, director or stockholder thereof while acting within the scope of his duties as such, and any

organization or proprietor with respect to real estate management for the named insured. If the named insured is a partnership, the unqualified word 'insured' also includes any partner therein but only with respect to his liability as such." Thereafter, by endorsement entitled "Clubs," the policy provided: "The unqualified word 'insured' includes any member of the named insured, but only as respects his liability for activities of the named insured or activities performed by such member on behalf of the named insured, except while practicing for or participating in any game or sport." The Stones stipulated that on the date of the occurrence, they were not performing any activities on behalf of the club.

The trial court concluded that the coverage afforded by the insurance contract was corporate coverage, not individual member coverage; that the language of paragraph one of the "Clubs" endorsement did not provide coverage for members of the club while participating in sports; and that by clear and unambiguous language, the Stones were excluded from coverage because (1) they were not engaged in any activity on behalf of the club, and (2) they were playing golf at the time of the occurrence.

The Stones claim that the trial court erred in reaching those conclusions. They contend that paragraph one of the "Clubs" endorsement should be construed as insuring members of the club only when acting in behalf of the club, *unless* such members are participating in sports or games, in which event such members would be insured even though not acting on behalf of the club. They argue that a modifying clause is generally confined to the last

antecedent; that the clause "except while practicing for or participating in any game or sport" serves only to modify the clause immediately preceding it; and that the qualification that a member must be acting on behalf of the club to be an "insured" is limited to situations where the member is not participating in sports.

The Stones' interpretation of paragraph one of the "Clubs" endorsement is strained. In reaching its conclusions, the trial court implicitly recognized that the "except while practicing" clause modifies everything that precedes it, and that this qualification operates to limit the scope of coverage to persons defined as "insureds" by the previous two clauses. In reading the "except while practicing" clause as a limitation on the class of activities covered by the endorsement, and not as an exception to the requirement that members must be engaged in an activity on behalf of the club to be insured, the trial court ascribed the most natural and ordinary meaning to the words and phrases used. *Leathermode Sportswear, Inc.* v. *Liberty Mutual Ins. Co.,* 150 Conn. 63, 66, 186 A.2d 79. No satisfactory reason has been presented for us to disturb the court's conclusions.[3]

There is no error in either judgment.

In this opinion the other judges concurred.

---

[3] The claim that the court erred in permitting certain testimony regarding the intent which the contracting parties may have had in mind need not be discussed, as the court's decision was not based upon that testimony, but, rather, solely on the language of the policy.

Since the trial court correctly concluded that the third-party plaintiffs were not "insured," there was clearly no obligation for the third-party defendant to provide for the Stones' defense in the action by Paul Goodwin.