CHRISTOPHER E. JOHNSON ET AL. *v.*
CONNECTICUT INSURANCE GUAR-
ANTY ASSOCIATION ET AL.
(SC 18712)

Rogers, C. J., and Palmer, Zarella, McLachlan, Eveleigh, Harper and
Vertefeuille, Js.

Argued September 21—officially released November 8, 2011

*Mark D. Robins*, pro hac vice, with whom was *Charles W. Pieterse* and, on the brief, *Michael F. Cavolo* and *Thomas P. O'Connor*, for the appellant (named defendant).

*Sean K. McElligott*, for the appellees (plaintiffs).

## Opinion

HARPER, J. The plaintiffs, Christopher E. Johnson, individually and in his capacity as administrator of the estate of Debra L. Johnson, his deceased wife, brought the present declaratory judgment action seeking, inter alia, a determination that certain medical malpractice claims that they had asserted in an action against the defendant Middlesex Obstetrics and Gynecology Associates, P.C. (Middlesex), were covered under an insurance policy issued to Middlesex by Medical Inter-Insurance Exchange (Exchange). Due to Exchange's insolvency during the pendency of the malpractice action, the named defendant, Connecticut Insurance

Guaranty Association (association), assumed liability for Exchange's obligations to the extent that claims were covered under the Connecticut Insurance Guaranty Act (guaranty act).[1] Thereafter, the association filed a counterclaim for a declaratory judgment in the present action, contending that the claims against Middlesex were not covered because they were subject to a policy provision that excluded from corporate coverage liability based on "injury arising solely out of acts or omissions in the rendering or failure to render professional services . . . by any paramedical for whom a premium charge is shown on the declarations page." Following cross motions for summary judgment, the trial court rendered judgment in the plaintiffs' favor. The association appeals from that judgment,[2] contending that the trial court improperly determined that the policy exclusion was inapplicable. We affirm the trial court's judgment.

The record reveals the following undisputed facts. Following the death of Debra Johnson, the plaintiffs brought a medical malpractice action against Middlesex and Sally J. Irons, an obstetrician, seeking damages for negligence and loss of consortium. Middlesex and Irons were insureds under the Exchange policy. The plaintiffs thereafter determined that their claims against Middlesex were predicated on the acts of one of its nurse practitioners, Kathy Hoffman. Hoffman was not named as a defendant in the malpractice action.[3]

---

[1] The guaranty act, General Statutes § 38a-836 et seq., defines the scope of a "covered claim"; General Statutes § 38a-838 (5); and prescribes a limit on the association's liability for each such claim, which in the present case is $300,000. See General Statutes § 38a-841.

[2] The association appealed from the trial court's judgment to the Appellate Court, and we thereafter transferred the appeal to this court. See General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] The plaintiffs indicated in filings to the trial court in the declaratory judgment action that Hoffman's alleged negligence was ascertained in discovery, after the statute of limitations had expired.

After a dispute arose between the plaintiffs and the association as to Middlesex's coverage, these parties each sought a declaratory judgment. In subsequent cross motions for summary judgment, the limited issue before the trial court was whether Middlesex was covered under the Exchange policy for liability predicated on Hoffman's alleged negligence in light of the policy's paramedical exclusion to corporate coverage. The trial court rendered judgment in the plaintiffs' favor, apparently determining that the exclusion plainly did not apply. It underscored the fact that Hoffman was not a named insured, a dispositive fact in a question of coverage in *Connecticut Medical Ins. Co.* v. *Kulikowski*, 286 Conn. 1, 942 A.2d 334 (2008). Ultimately, the court concluded that the exception did not apply because "the premium charge for paramedicals under Coverage Part C was listed as 'included' and there were no paramedicals identified in or premium charges for paramedicals listed on [the] declaration pages . . . ."

The association appeals from that judgment, claiming that *Kulikowski* does not support the trial court's conclusion and that the Exchange policy unambiguously indicates that the exclusion applies. Although we agree that *Kulikowski* does not control the present case,[4] we conclude that the pertinent policy terms are ambiguous and, therefore, must be construed in favor of coverage.

---

[4] In *Connecticut Medical Ins. Co.* v. *Kulikowski*, supra, 286 Conn. 3, the sole issue before this court was "whether the trial court properly concluded as a matter of law that a nurse practitioner referenced by job title, but not listed as a named insured, in the declarations page of a physician's medical malpractice insurance policy, was not a separately insured individual under the policy." The policy at issue in that case required the "individual" to be "named" on the declaration page in order to be an insured. Id., 8–9. The Exchange policy at issue in the present case has numerous features that distinguish it from the one at issue in *Kulikowski*, including the absence of any linkage between "paramedicals" and either the term "individual" or the express requirement that they be named or identified. See footnote 8 of this opinion. We note that the plaintiffs do not contend that *Kulikowski* controls, or even has any bearing on, the present case.

Accordingly, we affirm the trial court's judgment, but under different reasoning.

We undertake our task in the present case pursuant to well established principles. "[C]onstruction of a contract of insurance presents a question of law for the court which this court reviews de novo. . . . An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract . . . . In accordance with those principles, [t]he determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . . Under those circumstances, the policy is to be given effect according to its terms. . . . When interpreting [an insurance policy], we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result. . . .

"In determining whether the terms of an insurance policy are clear and unambiguous, [a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading. . . . Under those circumstances, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy." (Citations omitted; inter-

nal quotation marks omitted.) *Connecticut Medical Ins. Co.* v. *Kulikowski*, supra, 286 Conn. 5–6.

Mindful of these principles, we turn to the Exchange policy at issue in the present case. That policy effectively consists of two parts: (1) the "Medical Group Practice, Professional Liability Insurance, Permanent Protection Policy," a form contract; and (2) the declarations pages, which tailor coverage, effective dates and premiums to the individual insureds.[5]

Section I of the policy, "Coverage Agreements," indicates that there are three types of coverage available: "Coverage A–Individual Professional Liability"; "Coverage B–Corporate/Partnership Liability"; and "Coverage C–Paramedical Employee Liability." With respect to Coverage B, § I provides in relevant part: "The Exchange will pay on behalf of the insured all sums that the insured shall become legally obligated to pay as damages because of . . . [i]njury arising out of the rendering of or failure to render . . . professional services by any person for whose acts or omissions the corporation/partnership insured is legally responsible . . . ." The association does not dispute that, but for any applicable exclusion, the plaintiffs' claims against Middlesex would be covered pursuant to § I.

Section III of the policy sets forth "Exclusions." It provides in relevant part: "This insurance does not apply to liability of the insured . . . (i) corporation/ partnership under Coverage Agreement B with respect to injury arising solely out of acts or omissions in the rendering or failure to render professional services by individual physicians or nurse anesthetists, or *by any*

[5] In addition to the "Permanent Protection," or primary, policy, Middlesex has an excess coverage policy with the Exchange. The parties agree that coverage under the excess policy is determined by our decision as to coverage under the primary policy. We also note that the primary policy includes various endorsements that reflect modifications to coverage, none of which is relevant to the present case.

*paramedical for whom a premium charge is shown on the declarations page.*" (Emphasis added.) It is undisputed in the present case that Hoffman is a paramedical employee, that Hoffman's alleged acts constitute professional services[6] and that her acts alone are the claimed basis for Middlesex's liability. Thus, the issue in the present case turns on the meaning of the emphasized phrase in the relevant exclusion, in connection with the declarations page.

Although the exception refers to the declarations "page," there are in fact several declarations pages. The "Common Policy Declarations" provide as follows: "Insurance is afforded only with respect to the Coverage Part(s) for which a premium charge or 'no charge' is indicated. This page of the declarations provides information for the policy in total. Refer to schedules on following pages of these declarations for information on individual insureds.

|  | Premium |
|---|---|
| PART I–PROFESSIONAL LIABILITY COVERAGES | |
| Coverage A–Individual Professional Liability | $2,885,333.00 |
| Coverage B–Corporate/Partnership Liability | $ 15,000.00 |
| Coverage C–Paramedical Employee Liability | $ Included |
| PART II–OTHER COVERAGES | $ N/A |
| TOTAL PREMIUM | $2,900,333.00" |

In addition to the Common Policy Declarations, the policy contains a "Coverage Part A Declarations, Schedule of Individual Insureds" and a "Coverage Part B Declarations, Schedule of Individual Corporation/Part-

---

[6] " 'Professional services' " are defined in part under the policy as "services requiring specialized knowledge and mental skill in the practice of the profession described in the declarations page . . . ." There is no definition of paramedicals in the policy, and, although there is a reference to "Paramedical Employee Liability" on the Common Policy Declarations page, there is no description of professions that are deemed paramedical on any of the declarations pages.

nerships.'"[7] There is no Coverage Part C Declarations, Schedule of Paramedical Insureds. In the Coverage Part A Declarations, the schedule reflects, inter alia: the names of 133 individuals covered, including Irons; their principal practice; limits of coverage; and a premium, which ranges from $2402 for medical directors to $23,588 for certain individuals whose principal practice is obstetrics/gynecology. In the Coverage Part B Declarations, the schedule reflects the names of twenty-eight corporations or partnerships and the coverage limit for the lead corporation only, but no premiums.

Having laid out the essential terms of the policy, we now turn to the interpretation advanced by the association in this appeal. It claims that the policy's exclusion to Middlesex's corporate coverage unambiguously applies in the present case because: (1) the exclusion applies to paramedical employees as a class, as long as there is a premium shown for that class on the declarations page; and (2) such a premium is shown on the Common Policy Declarations in that the word "included" under Part C Coverage indicates that some portion of the $15,000 premium charged for Part B Coverage is attributable to Part C Coverage. In support of its construction, the association contends that treatment of paramedical employees as a class is consistent with the policy language defining who is insured.[8] It

---

[7] The Coverage Part B Declarations page is accompanied by a "Schedule of Additional Named Insureds." Middlesex is listed on that schedule.

[8] The association contrasts language that requires naming or identifying persons and entities under Coverage A and Coverage B with the term "any" under Coverage C. Section IV of the policy provides: "Each of the following is an insured to the extent set forth below:

"(a) under Coverage A, any individual *named* in the Schedule of Insureds;

"(b) under Coverage B, any partnership *identified* in the declarations page, and any member thereof with respect to the acts or omissions of others;

"(c) under Coverage B, any corporation *named* in the declarations page, and any executive officer, director or shareholder thereof while acting within the scope of his duties as such with respect to acts or omissions of others;

"(d) under Coverage C, *any* employee of an insured under Coverage B (other than a physician or surgeon or an individual named on the Schedule

further contends that the meaning it ascribes to the term "included" is consistent with the collective limit on liability shared by a corporation and any of its unscheduled employees under the policy.[9] Accordingly, the association asserts that the trial court improperly determined that Hoffman had to be named on the declarations page in order for the exclusion to apply. The association concedes that the policy was intended to cover the type of claim alleged in the underlying malpractice action but contends that, because that coverage existed only under Coverage C Paramedical Employee Liability, the plaintiffs' failure to name Hoffman as a defendant results in there being no coverage under the policy to shield Middlesex from liability.

We cannot help but note at the outset the seemingly bizarre result called for by the association's position: that a medical practice might purchase coverage for a particular and foreseeable risk—liability for the negligence of its professional employees—but that actual coverage would depend upon the way a given plaintiff happens to formulate its claim, a contingency that is outside of the insured's control and never expressly articulated in the policy. In response to questions at oral argument before this court, the association could not offer a persuasive reason why a medical practice would purchase such a policy,[10] suggesting only that

of Insureds) while acting within the scope of his duties as such." (Emphasis added.)

[9] Section V (a) of the policy provides in relevant part: "The limit of liability stated in the declarations page as 'each medical incident' is the total limit of the Exchange's liability for damages due to each medical incident. This limit of liability shall apply:

"1) separately to each individual named in the Schedule of Insureds; and

"2) collectively, to the corporation or partnership named in the declarations as an insured and the employees (other than a physician, surgeon or an individual named on the Schedule of Insureds) of a corporation or partnership insured under Coverage B. . . ."

[10] We note that, for reasons that are not apparent to this court, the insured, Middlesex, filed an appearance and answer in the present case but did not thereafter participate in any of the proceedings. Therefore, because the

perhaps Middlesex would have had to pay a higher premium for its Coverage B had it elected not to obtain separate coverage for paramedical employees or elected to obtain separate coverage for such employees at no charge.[11]

Despite the counterintuitive result that the association's construction yields, we would be bound to apply it if the policy terms unambiguously and inexorably led to the conclusion that the parties manifested such an intention. See *Liberty Mutual Ins. Co.* v. *Lone Star Industries, Inc.*, 290 Conn. 767, 796, 967 A.2d 1 (2009) ("[t]he court must conclude that the language should be construed in favor of the insured unless it has 'a high degree of certainty' that the policy language clearly and unambiguously excludes the claim"). We conclude, however, that the policy does not unambiguously manifest a clear intention to exclude coverage for Middlesex in the present case.

As we previously have noted, the exception to Middlesex's Coverage B applies to "injury arising solely out of acts or omissions in the rendering or failure to render professional services by individual physicians or nurse anesthetists, or by *any paramedical for whom a premium charge is shown on the declarations page.*" (Emphasis added.) The association's contention that

association has assumed liability for the Exchange's claims that are covered under the guaranty act, we are presented with a circumstance in which we are called on to construe an insurance policy without the benefit of the views of either the insured or the insurer who drafted the policy. As we recently noted with respect to the rule requiring interpretation of ambiguous policy language in favor of coverage, there is "no reason to distinguish between the rule's application as to an insurance company that drafted the policy . . . and its application as to another entity that assumes the drafter's responsibilities, in other words, that stands in the shoes of the drafter." *Connecticut Ins. Guaranty Assn.* v. *Fontaine*, 278 Conn. 779, 789, 900 A.2d 18 (2006).

[11] As we previously noted, according to the Common Policy Declarations page of the policy, coverage is afforded "only with respect to the Coverage Part(s) for which a premium charge or 'no charge' is indicated."

this exclusion unambiguously applies to paramedical employees as a class, such that Hoffman need not be individually named on the declarations page, necessarily depends on the fact that a premium charge for that class is shown on the declarations page. We conclude that the policy does not unambiguously demonstrate that fact. Therefore, even under the association's questionable construction of the exception, it cannot prevail.[12]

In our view, a layperson reasonably could understand the phrase "premium charge . . . shown on the declarations page" to mean that a specific amount has been assessed for coverage of paramedical employees and that this specific amount will be evident on a declarations page. See *Holy Trinity Church of God in Christ* v. *Aetna Casualty & Surety Co.*, 214 Conn. 216, 223 n.5, 571 A.2d 107 (1990) ("[i]t is a basic principle of insurance law that policy language will be construed as laymen would understand it" [internal quotation marks omitted]). The Common Policy Declarations list a specific dollar figure for premiums for Coverage A–Individual Professional Liability and for Coverage B–Corporate/Partnership Liability, but simply indicate "Included" under the premium column associated with

---

[12] We note that, by contrast to the strange results yielded by the association's interpretation, construing the exception to refer to individual paramedical employees appears to have some basis in logic. A medical practice or the insurer reasonably might want to identify, either in Coverage A or Coverage C Declarations, those paramedical employees who are subject to a higher risk of being named in a malpractice action, either because of the nature of their job or their past history, and provide a separate limit of coverage for those individuals at an additional premium based on the relative risk. Although this construction would not completely avoid the problem that a plaintiff's pleading could determine the availability of coverage under the exception, it does not create the anomalous situation in the association's construction under which a medical practice shares a collective limit of liability with its paramedical employees, covers the premiums for its paramedical employees within its own premium but has no coverage if its paramedical employees are not named in the action.

Coverage C–Paramedical Employee Liability. The term "included" is not defined in the policy and is not linked directly with any other term that illuminates its meaning. Cf. *State* v. *Jones*, 51 Conn. App. 126, 137, 721 A.2d 903 (1998) ("[a]lthough 'including' has been found to be ambiguous by itself, other language [in the statute] may remove the ambiguity, as in this case"), cert. denied, 247 Conn. 958, 723 A.2d 814 (1999).

More specifically, the reference to "[i]ncluded" is not accompanied by an express indication *what* is included *where*. Even if we were to accept the association's contention that the term "included" necessarily refers to the $15,000 premium listed for Coverage B because of the collective limits of liability that apply; see footnote 9 of this opinion; that term could just as easily indicate that Coverage C is provided at no additional charge as some portion of the $15,000 premium is charged for Coverage C.[13] The policy provides no means of ascertaining which portion, if any, of that $15,000 premium is being charged for Coverage C. Indeed, we question how the insured could have weighed the options that the association claims were available if separate figures were not provided for Coverage B and Coverage C. By comparison, the basis for the $2,885,333 premium charged for Individual Professional Liability can be ascertained by reference to the Coverage Part A Declarations, which assigns specific premiums to each individual listed. The Coverage Part B Declarations for

---

[13] The association cites one dictionary defining "included" as "being part of the whole; contained; covered"; Random House Unabridged Dictionary (2d Ed. 1993); as evidence that this term unambiguously indicates a premium charge. We first note that this court previously has deemed the term "included" ambiguous when used in a statute. See, e.g., *State* v. *White*, 204 Conn. 410, 422–23, 528 A.2d 811 (1987); *Hartford Electric Light Co.* v. *Sullivan*, 161 Conn. 145, 150, 285 A.2d 352 (1971). We further note that a premium "covered" or "contained" in another premium charge does not necessarily mean that a separate premium, above and in addition to some part of the premium listed, has been assessed.

corporations list no premium charges, however, and there are no Coverage Part C Declarations. Even if the parties intended to cover paramedical employees as a class, a Coverage Part C Declarations page could have listed Middlesex's paramedical employees as a class and shown a specific premium charged for coverage of that class to make clearer that the exclusion applies.

The association contends, however, that "included" can only be interpreted as showing a premium charge when read in light of a statement that precedes it in the Common Policy Declarations. That statement provides: "Insurance is afforded only with respect to the Coverage Part(s) for which a premium charge or 'no charge' is indicated." The association claims that this language gives rise to only three possibilities: a premium charge is indicated and coverage is afforded; no charge is indicated but coverage nonetheless is afforded; or no coverage is afforded. It contends that we cannot construe "included" to mean "no charge," because the policy requires that precise term to be used to make such an election. The association further contends that, if "included" is construed to mean no premium charge is shown, then no coverage is afforded for paramedical employee liability, leaving a broad swath of employees unprotected from malpractice actions. We disagree.

The association's contentions overlook an important principle and the narrow scope of the issue before us. We construe ambiguities in favor of coverage. That means that the exclusion at issue in the present case is read narrowly. See *Allstate Ins. Co.* v. *Barron*, 269 Conn. 394, 406, 848 A.2d 1165 (2004) ("[W]hen the words of an insurance contract are, without violence, susceptible of two [equally reasonable] interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted. . . . [T]his rule of construction favorable to the insured extends to exclusion clauses." [Internal quotation marks omitted.]). The

present case does not require us to determine whether the designation of "included" affords insurance for paramedical employees under Coverage C. If, at some point, a court is called on to do so, it will construe broadly the policy provisions that bear on that question, some of which have no bearing on the issue in the present case. For purposes of the present case, we simply conclude that, even if we assume that the exclusion refers to paramedicals as a class, as the association contends, the policy does not unambiguously show a premium charge for that class on the declarations page.

The effect of this conclusion exposes the insurer to no greater liability than the risk contemplated under the association's construction of the policy. Indeed, given that Middlesex paid for coverage for the claimed negligence, our construction is most consistent with the reasonable expectations of the parties. See *Pacific Indemnity Ins. Co.* v. *Aetna Casualty & Surety Co.*, 240 Conn. 26, 33 n.8, 688 A.2d 319 (1997) ("[i]t is a basic principle of insurance law that policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters, and that ambiguities in contract documents are resolved against the party responsible for its drafting; the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view" [internal quotation marks omitted]). Accordingly, we conclude that the policy exclusion is inapplicable to Middlesex's coverage for claims brought against it predicated solely on liability that it may incur for Hoffman's acts. Therefore, the trial court properly rendered judgment in the plaintiffs' favor.

The judgment is affirmed.

In this opinion the other justices concurred.