******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

McDONALD, J., with whom EVELEIGH, J., joins, dissenting. I disagree with the majority that the corporate coverage under the professional liability insurance policy issued to the defendant Associated Women's Health Specialists, P.C. (Health Specialists), unambiguously excludes medical malpractice claims seeking to hold that professional corporation vicariously liable solely on the basis of the negligence of one of its physicians, France Bourget. I would conclude that the policy is ambiguous as to this issue, and that, in accordance with the reasonable expectation of the insured, the policy should be construed in favor of coverage. Accordingly, I would conclude that the Appellate Court improperly reversed the trial court's judgment in favor of the defendants, Susan Drown and Rodney Drown, individually and on behalf of their minor son, Joshua Drown, and Health Specialists, and remanded the case with direction to render judgment in favor of the plaintiff, Connecticut Insurance Guaranty Association (association).[1] See *Connecticut Ins. Guaranty Assn.* v. *Drown*, 134 Conn. App. 140, 159, 37 A.3d 820 (2012). Therefore, I respectfully dissent.

As the majority acknowledges, "[u]nder our law, the terms of an insurance policy are to be construed according to the general rules of contract construction. . . . The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . . However, [w]hen the words of an insurance contract are, without violence, susceptible of two [equally reasonable] interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted. . . . [T]his rule of construction favorable to the insured extends to exclusion clauses." (Internal quotation marks omitted.) *Liberty Mutual Ins. Co.* v. *Lone Star Industries, Inc.*, 290 Conn. 767, 795–96, 967 A.2d 1 (2009).

Moreover, "[o]ur analysis of the language of the insurance contract is governed by the well established principle of insurance law that policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters . . . . Thus, we must decide whether, *reading the policy from the perspective of a reasonable layperson in the position of the purchaser of the policy*, the policy is ambiguous. *Ceci* v. *National Indemnity Co.*, 225 Conn. 165, 168, 622 A.2d 545 (1993)." (Citations

omitted; emphasis added; internal quotation marks omitted.) *Israel* v. *State Farm Mutual Automobile Ins. Co.*, 259 Conn. 503, 508–509, 789 A.2d 974 (2002); accord *Berry* v. *Federal Kemper Life Assurance Co.*, 136 N.M. 454, 471, 99 P.3d 1166 (App. 2004) ("The concept of reasonableness has a somewhat specialized meaning in the insurance context . . . . When evaluating competing interpretations of a policy, the courts should view the language issue from the standpoint of a hypothetical reasonable insured. . . . Thus, the question the court should ask itself initially is what understanding a reasonably intelligent, non-lawyer lay person might glean from the policy, in light of the usual meaning of the words and the circumstances leading to purchase of the policy. . . . Specialized knowledge of the insurance industry case law, academic treatments, and industry norms or standards should not enter into the inquiry." [Citations omitted; internal quotation marks omitted.]), cert. denied, 100 P.3d 672 (2004), cert. denied, 544 U.S. 920, 125 S. Ct. 1640, 161 L. Ed. 2d 477 (2005).

With these principles in mind, I turn to the pertinent provisions of the professional liability insurance policy issued to Health Specialists by its now insolvent insurer, Medical Inter-Insurance Exchange (Exchange). The declarations page of the policy, entitled "PHYSICIANS AND SURGEONS PROFESSIONAL LIABILITY CLAIMS MADE INSURANCE,"[2] reflects that Exchange made available three types of coverage under such policies: "A. Individual Professional Liability" (coverage A or individual coverage); "B. Corporate/Partnership Liability" (coverage B or corporate coverage); and "C. Paramedical Employee Liability" (coverage C or paramedical coverage).[3] The declarations page provides that insurance is afforded only for the coverage parts "for which a premium charge or 'No Charge' is indicated." Although there is no such indication for any of the coverage parts, there is a policy limit set forth for coverage B only—$2 million for each medical incident and $5 million aggregate. It is undisputed that the policy affords coverage B/corporate coverage, and no other coverage, to the named insured, Health Specialists.

Section I of the policy, "COVERAGE AGREEMENTS," provides in relevant part with respect to coverage B: "[Exchange] will pay on behalf of [Health Specialists] all sums that [Health Specialists] shall become legally obligated to pay as damages because of . . . [i]njury arising out of the rendering of or failure to render . . . professional services[4] by any person for whose acts or omissions . . . [Health Specialists] is legally responsible." (Footnote added.) It is undisputed that, barring the application of an exclusion or limitation, vicarious liability for the negligence of a physician employed by a corporation would fall within the scope of corporate coverage.

Section II sets forth policy exclusions. Exclusion (i) of that section provides in relevant part: "This insurance does not apply to liability of [Health Specialists] . . . (i) corporation/partnership under Coverage Agreement B with respect to injury arising *solely* out of acts or omissions in the rendering or failure to render professional services by individual physicians or nurse anesthetists, or by any paramedical *for whom a premium charge is shown on the declarations page.*" (Emphasis added.)

The majority has effectively adopted the Appellate Court's opinion in concluding that a claim of vicarious liability predicated solely on the negligence of a physician acting for the professional corporation is unambiguously excluded from coverage under exclusion (i). This interpretation is based solely on technical rules of grammar and a rule of construction of questionable application to the present case. In particular, in concluding that the phrase "for whom a premium charge is shown on the declarations page" modifies only the last category of employees—paramedicals—the majority focuses on: (1) the comma and phrase "or by" preceding "any paramedical for whom a premium charge is shown on the declarations page"; and (2) the last antecedent rule of construction. For the reasons that follow, I am not persuaded that application of these technical rules yields the only reasonable interpretation of the policy at issue.

Rules of grammar are simply one tool of construction, and many jurisdictions recognize that such rules cannot supersede a reasonable, contextual reading of an insurance contract. See, e.g., *Senn's Administratrix* v. *Michigan Mutual Liability Co.*, 267 S.W.2d 526, 527 (Ky. App. 1954) ("[i]n the construction of all contracts the endeavor of the courts is to give the contract under investigation such a construction as will comport with the reasonable intent of the parties in making the contract, although this construction may not conform to strict rules of grammar or punctuation" [internal quotation marks omitted]); *Philadelphia Indemnity Ins. Co.* v. *Maryland Yacht Club, Inc.*, 129 Md. App. 455, 479, 742 A.2d 79 (1999) ("[A]lthough the court, in construing a contract, will not ignore the rules of grammar and the grammatical construction of the language used, the grammatical construction will not be followed if a different construction will better give effect to the intention of the parties as shown by the whole instrument and the circumstances . . . . Grammar is one helpful tool, among many, for discerning the meaning of words." [Citations omitted; internal quotation marks omitted.]); *Jarrard* v. *Continental Casualty Co.*, 250 Or. 119, 124, 440 P.2d 858 (1968) ("[t]he rules of grammar . . . are technical and, as in the case of statutes, will not be permitted to control construction of a contract when to do so would be to render the language

meaningless or absurd"); cf. *Tuohey* v. *Martinjak*, 119 Conn. 500, 503, 177 A. 721 (1935) ("[i]n construing statutes the insertion or omission of commas will often be overlooked if thereby the fair purpose and intent of the law would be effected").

Moreover, the last antecedent rule of construction[5] only has been applied by this court thus far in the construction of statutes, and even then "only to the extent that no contrary intention appears and the construction does not otherwise impair the meaning of the sentence." (Internal quotation marks omitted.) *Republican Party of Connecticut* v. *Merrill*, 307 Conn. 470, 491, 55 A.3d 251 (2012). This court has not had occasion to consider whether this rule should be applied to contracts generally or insurance contracts specifically. But see *Goodwin* v. *Woodbridge Country Club, Inc.*, 170 Conn. 191, 198, 365 A.2d 1158 (1976) (rejecting party's construction of contract based on application of rule, noting that application of rule would result in construction that was strained and contrary to natural and ordinary meaning of words and phrases used). Although many other jurisdictions have recognized the rule's application in construing contracts generally, some jurisdictions have questioned its utility in ascertaining the intent of the parties to the contract, while others that have applied the rule generally limit its application through other rules of construction.[6] In addition to the concerns articulated by these jurisdictions, there also is reason to question the rule's application to insurance contracts specifically, where we are required to view the policy's meaning from the perspective of the reasonable layperson in the position of the purchaser of the policy. See *Ceci* v. *National Indemnity Co.*, supra, 225 Conn. 168. Nonetheless, even if I were to assume that this rule applies in the construction of insurance contracts, for the reasons that follow, it would at best lend support to one plausible construction, not be outcome determinative.

Because we are required to consider the policy from the perspective of the reasonable insured layperson, I cannot help but note at the outset that the majority's interpretation seems counterintuitive in its real world application. Neither the majority, nor the Appellate Court, nor the association has offered a reasonable explanation as to why Health Specialists, or any other obstetrical practice for that matter, would purchase a corporate liability policy that would exclude from coverage the most obvious source of its potential liability, the negligence of its physicians, under most circumstances.[7] Indeed, the title of the policy, "PHYSICIANS' & SURGEONS' PROFESSIONAL LIABILITY INSURANCE CLAIMS—MADE," read together with the broad grant of insurance coverage for any "[i]njury arising out of the rendering of . . . professional services by any person for whose acts or omissions the corporation/partnership [Health Services] is legally responsible," would

seem to suggest that coverage for such persons is *precisely* the policy's main purpose. Nor has a logical explanation been advanced as to why an insurer would provide no corporate coverage if a physician "solely" was at fault for the injuries, but would provide full coverage if the physician was 99 percent at fault for the injuries at issue and a person to whom the exclusion does not apply was 1 percent at fault because such injury was not caused solely by the physician's acts. Such a construction would surely encourage a professional corporation to require that a nonscheduled paramedical be involved in every interaction between a physician and a patient to facilitate a claim of shared negligence and thereby negate the exclusion.

Despite these real world implications, as this court previously noted when the association's construction of this identical policy exclusion in another case yielded a different counterintuitive result, "we would be bound to apply [the exclusion] if the policy terms unambiguously and inexorably led to the conclusion that the parties manifested such an intention. See *Liberty Mutual Ins. Co.* v. *Lone Star Industries, Inc.*, [supra, 290 Conn. 796] ([t]he court must conclude that the language should be construed in favor of the insured unless it has a high degree of certainty that the policy language clearly and unambiguously excludes the claim)." (Internal quotation marks omitted.) *Johnson* v. *Connecticut Ins. Guaranty Assn.*, 302 Conn. 639, 648, 31 A.3d 1004 (2011). I cannot say with a high degree of certainty that the policy excludes the Drowns' claims.

Turning back to the text of the policy, exclusion (i) provides that corporate coverage will not apply with respect to injuries "solely" resulting from "professional services by individual physicians or nurse anesthetists, or by any paramedical for whom a premium charge is shown on the declarations page."[8] Thus, the exclusion refers to three categories of professionals: physicians, nurse anesthetists, and paramedicals. More particularly, exclusion (i) refers to "*individual* physicians or nurse anesthetists" and "*any* paramedical . . . ." (Emphasis added.) Accordingly, the comma and the phrase "or by" preceding "any paramedical" simply could be intended to make clear that "individual" modifies *both* physicians and nurse anesthetists.[9] Cf. *State* v. *Roque*, 190 Conn. 143, 152, 460 A.2d 26 (1983) (noting that "while punctuation is a recognized aid to statutory construction, it is not conclusive," and that "the disjunctive 'or' has often been construed as 'and' ").

Indeed, the construction advanced by the majority appears to render the term "individual" superfluous. As the Appellate Court noted, the plural form of the word physician is broad enough to encompass one or more than one physician. *Connecticut Ins. Guaranty Assn.* v. *Drown*, supra, 134 Conn. App. 153. "We previously have recognized the canon of construction of insurance

policies that a policy should not be interpreted so as to render any part of it superfluous. . . . Since it must be assumed that each word contained in an insurance policy is intended to serve a purpose, every term will be given effect if that can be done by any reasonable construction . . . ." (Internal quotation marks omitted.) *R.T. Vanderbilt Co.* v. *Continental Casualty Co.*, 273 Conn. 448, 468, 870 A.2d 1048 (2005). Thus, under this rule, the defendants' interpretation would be preferred.

It also is important to view exclusion (i) in context with the policy as a whole. I note that § III of the policy, which sets forth "PERSONS INSURED," provides that each of the following is an insured: "[U]nder Coverage A, any *individual* named in the declarations page as insured" and "under Coverage C [paramedical liability], *any employee* of an insured under Coverage A or Coverage B for whom a premium charge is shown in the declarations page." (Emphasis added.) Thus, an insured under coverage A is an "*individual* named in the declarations page," just as exclusion (i) refers to "*individual* physicians or nurse anesthetists . . . ."[10] (Emphasis added.) Paramedicals, by contrast, need not be *individually* named to be insured under coverage C.[11] Moreover, although the majority reasonably points out that the phrase "for whom a premium charge is shown on the declarations page" is used only in relation to paramedical coverage in § III, when that phrase is used in exclusion (i), it is broad enough to encompass both named *individuals* (coverage A), for whom there presumably would be a corresponding premium, and paramedicals (coverage C), for whom a premium would be shown even if they are not named individually.

I also note that exclusion (i) is the last of nine enumerated exclusions. Each of the preceding eight exclusions addresses relatively narrow categories of acts or related remedies, many of which appear fairly standard, such that an insured would not expect coverage for such acts. For example, in § II (b) of the policy coverage is excluded for injuries arising from a criminal act, and in § II (d) coverage is excluded for an act unauthorized in accordance with licensing requirements or restrictions. The narrower reading of exclusion (i) advanced by the defendants renders the scope of that provision more consistent with the narrow scope of the exclusions that precede it, whereas the association's expansive construction makes exclusion (i) practically swallow the rule of coverage prominently provided at the outset of the policy.

Finally, I note that Health Specialists' vicarious liability under coverage B for injuries caused by the negligence of physicians or nurse anesthetists already is limited by § VIII (g) of the policy. Section VIII of the policy sets forth conditions of insurance. Section VIII (g) provides in relevant part that coverage "shall not

apply to any individual, partnership or corporation insured with respect to claims arising out of the acts or omissions of . . . physician or nurse anesthetist employees of an individual, partnership or corporation insured . . . *unless such persons have individual coverage for such claims* at the time they are made *under a physicians' and surgeons' or similar professional liability insurance policy with limits of liability equal to or greater than the limits of liability of the insured under this policy*."[12] (Emphasis added.) Physicians and nurse anesthetists are required by statute in this state, and apparently most states, to carry malpractice insurance in a prescribed amount. See General Statutes §§ 20-11b and 20-94c; see also *Butler* v. *Flint Goodrich Hospital of Dillard University*, 607 So. 2d 517, 521 (La. 1992), cert. denied sub nom. *Butler* v. *Medley*, 508 U.S. 909, 113 S. Ct. 2338, 124 L. Ed. 2d 249 (1993). Such individual insurance would be a primary, and equal or greater, source of recovery for any judgment rendered solely due to the negligence of such professionals.

Therefore, I would conclude that the defendants have advanced a construction of the policy supporting coverage that is at least equally reasonable to the one advanced by the association, especially when the text of the policy is viewed in the light of Health Specialists' purpose in obtaining the policy. Moreover, because the parties both have advanced reasonable constructions, I believe we properly may consider undisputed extrinsic evidence; *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, 284 Conn. 744, 762–63, 936 A.2d 224 (2007); namely, the six year period during which Exchange offered a defense to Health Specialists without reserving its rights under exclusion (i).[13] Accordingly, the policy should be construed in favor of coverage.

I respectfully dissent.

[1] In light of this conclusion, I do not need to determine whether the association is liable because of the breach by Medical Inter-Insurance Exchange, the insolvent insurer, of its duty to defend under the policy at issue.

[2] As the Appellate Court previously explained in connection with an Exchange policy, " 'claims-made' " simply means "that coverage under the policy depended on the date that the insured reported the claim to the [insurer]." *Mitchell* v. *Medical Inter-Insurance Exchange*, 101 Conn. App. 721, 723, 923 A.2d 790, cert. denied, 284 Conn. 903, 931 A.2d 265 (2007).

[3] The policy does not define paramedical employees. Webster's Third New International Dictionary (2002) defines paramedical as "concerned with supplementing the work of medical personnel: having a secondary relation to medicine . . . ." See also American Heritage Dictionary (3d Ed. 1992) ("[o]f, relating to, or being a person trained to give emergency medical treatment or assist medical professionals"); Stedman's Medical Dictionary (28th Ed. 2006) p. 1420 ("[r]elated to the medical profession in an adjunctive capacity, e.g., denoting allied health fields such as physical therapy or speech pathology" or "[r]elating to a paramedic").

[4] " 'Professional services' " are defined in relevant part under § VI of the policy as "services requiring specialized knowledge and mental skill in the practice of the profession described in the declarations page . . . ." There are, however, no professions described in the only declarations page in the record, except to the extent that the page is entitled "PHYSICIANS AND SURGEONS PROFESSIONAL LIABILITY CLAIMS MADE INSURANCE" and a notation setting forth "FORMS AND ENDORSEMENTS (attached to this

policy at inception)" lists a form for "Physicians and Surgeons Professional Liability Insurance Claims Made Policy."

[5] The Appellate Court explained: "The last antecedent rule provides that qualifying phrases, absent a contrary intention, refer solely to the last antecedent in a sentence." *Connecticut Ins. Guaranty Assn.* v. *Drown*, supra, 134 Conn. App. 151. The majority has applied this rule in concluding that the phrase "for whom a premium charge is shown on the declarations page" applied only to the antecedent immediately preceding it—"any paramedical"—and not to the more remote antecedents—"individual physicians or nurse anesthetists . . . ."

[6] As a general matter, jurisdictions have applied this rule only when it yields a construction that is consistent with a broader, contextual reading of the contract. See, e.g., *People ex rel. Lockyer* v. *R.J. Reynolds Tobacco Co.*, 107 Cal. App. 4th 516, 530, 132 Cal. Rptr. 2d 151 (2003) ("the last antecedent rule is not immutable and should not be rigidly applied in all cases" [internal quotation marks omitted]); *Chandler-McPhail* v. *Duffey*, 194 P.3d 434, 441 (Colo. App. 2008) ("[W]e discern no reason why the last antecedent rule should not be applied as a grammatical presumption in determining the intent of the contracting parties. . . . As a presumption, the rule is not inflexible and yields to any apparent contrary intention of the drafting parties." [Citations omitted; internal quotation marks omitted.]); *Gullett* v. *Van Dyke Construction Co.*, 327 Mont. 30, 36, 111 P.3d 220 (2005) ("[i]n interpreting contracts, this [c]ourt has followed a basic rule of grammatical construction that, absent the manifestation of a contrary intention, qualifying words and phrases should be applied only to the words or phrases immediately preceding, or in other words, the last antecedent" [internal quotation marks omitted]); *Wohl* v. *Swinney*, 118 Ohio St. 3d 277, 279, 888 N.E.2d 1062 (2008) ("[I]f there is contrary evidence that demonstrates that a qualifying phrase was intended to apply to more than the term immediately preceding it, we will not apply the last-antecedent rule so as to contravene that intent. Before applying the last-antecedent rule, we must therefore examine the contract as a whole to determine whether any contrary intent appears.").

Some jurisdictions have questioned the rule's utility in ascertaining intent. See, e.g., *Stanbalt Realty Co.* v. *Commercial Credit Corp.*, 42 Md. App. 538, 539, 401 A.2d 1043 (1979) ("[t]his [last antecedent] rule of construction, never adopted in Maryland, and of only marginal significance in the scattered jurisdictions that have called upon it, is too frail a reed to carry the appellant's burden"); id., 542 ("[t]he great professors of contracts, [Samuel] Williston and [Arthur] Corbin, in their respective multi-volume works do not even recognize the existence of any 'last antecedent rule' "); see also *Phoenix Control Systems, Inc.* v. *Ins. Co. of North America*, 165 Ariz. 31, 38, 796 P.2d 463 (1990) (Feldman, J., concurring) ("I see no benefit and much harm in using the doctrine of the last antecedent in construing contracts. Reliance on such arcane, judicially adopted grammatical rules does not help us reach the intentions of the parties. Surely, even if the parties had bargained for the boilerplate language in this policy—something the record does not establish at all—it would be a fiction to pretend they drafted the language mindful that its meaning would be ascertained through use of the doctrine of the last antecedent.").

Related to this concern, at least one jurisdiction has concluded that the rule cannot be used unless the court first concludes that the contract otherwise is ambiguous. See, e.g., *Miller* v. *Kase*, 789 So. 2d 1095, 1098 (Fla. App. 2001). Another jurisdiction suggested that its application cannot be used to yield an inequitable result to which a reasonable party would not have agreed. See, e.g., *Business Development Services, Inc.* v. *Field Container Corp.*, 96 Ill. App. 3d 834, 839, 422 N.E.2d 86 (1981) (declining to apply last antecedent rule when application contravened rule that "where a contract is susceptible of two constructions, one of which makes it fair, customary and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not likely enter into, the interpretation which makes a rational and probable agreement must be preferred" [internal quotation marks omitted]).

[7] Before the trial court, the association conceded that the policy would provide "very limited" coverage for a professional corporation on the basis of its physicians' conduct.

[8] In their briefs to this court, the defendants have not argued that the word "solely" renders exclusion (i) ambiguous. In their rebuttal to the association's oral argument before this court, however, they highlighted the fact that the association's construction of that term at oral argument was

inconsistent with the one that it previously had advanced. Specifically, in its brief to this court and in the proceedings before the trial court, the association indicated that exclusion (i) would not apply if an injury arose partially out of the acts or omissions of a nurse employed by a hospital or another medical practice having a different insurer. By contrast, at oral argument before this court, it indicated that, in order for the exclusion not to bar coverage, the injury must arise partially out of the acts or omissions of a *Health Specialists'* employee to whom the exclusion does not apply. The defendants recognize that this inconsistency, which does not directly bear on the case before us, would not entitle them to judgment in their favor. See *Connecticut Medical Ins. Co.* v. *Kulikowski*, 286 Conn. 1, 15, 942 A.2d 334 (2008) ("A party claiming that an insurance policy is ambiguous as to a particular issue . . . must do more than establish that the policy has some ambiguous language. . . . There must be a nexus between the ambiguity and the disputed issue. . . . The ambiguous language must render the policy ambiguous as to the relevant issue." [Emphasis omitted.]). Nonetheless, the defendants suggested at oral argument that, if we conclude that the applicable language is not ambiguous, we could remand the case to allow them to prove that someone who was not covered by the exclusion was partially negligent, together with Bourget. It is well settled that a party may not advance one theory before the trial court and a different one on appeal. *Ahmadi* v. *Ahmadi*, 294 Conn. 384, 395, 985 A.2d 319 (2009). Moreover, the fact that the association cannot settle on the scope of the exclusion seems to lend force to the conclusion that the exclusion is ambiguous. Nonetheless, I do not believe that it would be appropriate to remand the case for such evidentiary proceedings when the complaint contained no allegations of negligence as to another employee, except those withdrawn against another Health Specialists' physician.

[9] Thus, although I agree with the association that the use of "any" before paramedical indicates an intention to treat this category differently than physicians or nurse anesthetists, I disagree that the defendants' construction would effectively rewrite the policy to exclude coverage for " 'any individual physicians, nurse anesthetists, or paramedicals for whom a premium charge is shown on the declarations page.' "

[10] The significance of this common terminology is supported by § VIII (g) of the policy, discussed later in this opinion, which refers to "physician or nurse anesthetist *employees* of an individual, partnership or corporation insured . . . ." (Emphasis added.) Thus, a physician or nurse anesthetist may be covered as an insured if individually named or may be covered as an employee of an insured if not so named.

[11] The distinction in § III (a) and (d) between "individual named" in coverage A and "any employee" in coverage C would seem to indicate that paramedicals need not be named as individuals, but, rather, simply need to establish their status as an employee of an insured in such a capacity. This inference is supported by other cases indicating that paramedicals have been treated under professional liability policies as a broad undifferentiated class or as a subset of that class. Compare *Johnson* v. *Connecticut Ins. Guaranty Assn.*, supra, 302 Conn. 646 (association argued that "the exclusion applies to paramedical employees as a class, as long as there is a premium shown for that class on the declarations page"), with *Connecticut Medical Ins. Co.* v. *Kulikowski*, 286 Conn. 1, 4, 942 A.2d 334 (2008) (declarations page referenced by job title two nurse practitioners employed by physician under paramedical employee coverage). Perhaps lower risks of liability and greater turnover for such professionals weighs in favor of not identifying such persons individually by name, as is necessary for physicians and nurse anesthetists, who are required by law to carry a certain limit of professional liability insurance. See General Statutes §§ 20-11b and 20-94c.

[12] Bourget had individual coverage with another insurer in an amount equal to Health Specialists' coverage, thus satisfying the condition in § VIII (g).

[13] I note that, although the defendants have repeatedly cited throughout the course of these proceedings the fact that Exchange never asserted a reservation of rights, the association has never contended at any stage of these proceedings that there is any countervailing extrinsic evidence that would support the conclusion that the parties understood the policy to exclude claims like the one advanced in the present case. Most significantly, the association never claimed in its appeal to the Appellate Court that, even if the trial court properly determined that exclusion (i) of the policy was ambiguous, it improperly rendered summary judgment without permitting it to proffer extrinsic evidence of the parties' intent before applying the rule of contra proferentem. Therefore, I see no justification for remanding the

case to the trial court for an evidentiary hearing, as the concurring justices seem to suggest is required.

———————————————————