No. 2--06--0777    Filed: 8-8-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| ILLINOIS INSURANCE GUARANTY FUND, in the Place and Stead of Statewide Insurance Company, in Liquidation, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 05--MR--346 |
| | ) | |
| PAT SANTUCCI and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a/s/o Linda Duff, | ) ) ) | Honorable |
| | ) | Michael J. Colwell, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, the Illinois Insurance Guaranty Fund (IIGF), in the place and stead of Statewide Insurance Company, in liquidation, appeals from the trial court's order granting the motion for summary judgment brought by defendants, Pat Santucci and State Farm Mutual Automobile Insurance Company, as subrogee of Linda Duff. Plaintiff's complaint sought a declaration that it did not owe a duty to defend and/or indemnify Santucci with regard to an accident that occurred when two horses collided with a vehicle that was owned by Duff and insured by State Farm. We reverse because the underlying claim was not a covered claim under the Illinois Insurance Code (Insurance Code) (215 ILCS 5/534.3(a) (West 2004)).

FACTS

In November 2001, Santucci lived at 45 West Plank Road, Hampshire, Illinois. The Plank Road property consisted of 23 acres containing three outbuildings, a barn, and a house trailer. Santucci lived in the house trailer. He personally owned a number of horses that he kept at his property. He operated a business, P.S. Coyote, Inc., on the premises that was engaged in construction (excavation and water and sewer work). Santucci was the president of that business. P.S. Coyote, Inc., had no involvement with the horses.

On or about November 29, 2001, two of Santucci's horses escaped from his Plank Road property and collided with Duff's vehicle. Duff was insured by State Farm. Santucci did not have a homeowner's policy on the property at the time of the collision. However, on the date of the collision, Statewide insured P.S. Coyote under a commercial general liability policy.

In December 2003, State Farm, as Duff's insurer and subrogee, filed a two-count complaint against Santucci, seeking recompense for damages to Duff's vehicle as a result of the horse/vehicle collision. Count I alleged that Santucci boarded and harbored the horses at his property on Plank Road and that Santucci violated the Illinois Domestic Animals Running at Large Act (Domestic Animals Act) (510 ILCS 55/1 et seq. (West 2004)). Count II of the complaint alleged that Santucci was negligent in that he failed to: (a) "provide an adequate enclosure for the horses to prevent them from escaping the property where harbored"; (b) "inspect and reasonably maintain the enclosure where the horse was [sic] boarded in order to determine whether any defects existed in the enclosure that posed a risk of the horses' escape"; (c) "find and repair any defects or breeches [sic] in the enclosure where the horse was harbored or boarded when the Defendant knew or in the exercise of reasonable care would have known of and repaired said defect"; and (d) "erect and maintain fences of a height and strength sufficient to prevent the horse from jumping over the fence." State Farm also alleged that Santucci owed a

duty to provide, maintain, and repair the horse enclosure so as to prevent his horses from escaping and running at large. State Farm further alleged that Santucci breached his duty and that, as a result, Duff's vehicle was damaged. P.S. Coyote was not a party defendant or referenced in any regard in the complaint.

About February 2002, Statewide learned of the claim for the damages to Duff's vehicle and began investigating to determine whether coverage should be provided. On January 6, 2004, Statewide informed Santucci that it agreed to defend him in the State Farm case, without a reservation of rights. On the same day, a Cook County trial court found Statewide insolvent and ordered liquidation of the company pursuant to article VIII of the Insurance Code (215 ILCS 5/187 et seq. (West 2004)). On May 24, 2004, following liquidation, the IIGF took over the defense of Santucci's case pursuant to a reservation of rights.

On August 30, 2005, the IIGF filed a complaint for declaratory judgment against Santucci. The complaint alleged that the IIGF did not have a duty to defend and/or indemnify Santucci with regard to the State Farm action, because Santucci did not qualify as an insured under the Statewide/P.S. Coyote policy for the allegations contained in the State Farm complaint.

In his answer and affirmative defense to the IIGF's complaint, Santucci alleged that, when he returned to his Plank Road property on the date of the horse incident, he was acting in his capacity as president of P.S. Coyote. Santucci alleged that "he inadvertently left open and/or failed to lock the gate that enclosed the horses." Santucci argued that, because he was acting in his "corporate capacity," the Statewide policy issued to P.S. Coyote should provide him with a defense in the State Farm suit even though P.S. Coyote was not a named party in the complaint.

The IIGF filed a motion for summary judgment, arguing that: (1) the Statewide policy did not apply to Santucci in his individual liability; and (2) Statewide was obligated by statute only for "covered claims," which are defined as losses within the scope of a liquidated company's policy against an insured. The IIGF also argued that, since State Farm's complaint was against Santucci individually, and not as a P.S. Coyote officer, Santucci did not qualify as an insured under the Statewide policy, and the claim was not covered.

Santucci and State Farm (collectively, Santucci) filed a cross-motion for summary judgment, arguing that: (1) the IIGF waived its denial of coverage when Statewide previously agreed to defend Santucci in the State Farm case without a reservation of rights; (2) P.S. Coyote was liable for Santucci's horses; and (3) a conflict of interest existed between the IIGF and Santucci that estopped the IIGF from seeking to abandon its defense of him. Santucci attached portions of his deposition to the motion for summary judgment. Santucci stated during his deposition that, on the night of the incident, he was acting as president of P.S. Coyote when he left the gate open and returned equipment used by that company to the site. Further, he stated that the Plank Road property and trailer were used 80% of the time for P.S. Coyote business.

The IIGF replied to Santucci's cross-motion for summary judgment. The trial court granted Santucci's cross-motion for summary judgment and denied the IIGF's motion for summary judgment. The IIGF filed this timely appeal.

ANALYSIS

Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2--1005(c) (West 2004). The trial court must consider the pleadings, depositions, admissions, exhibits, and affidavits on file and construe them in favor of the nonmoving party. Murray v. Chicago Youth Center, 224

Ill. 2d 213, 228 (2007). We review the trial court's decision to grant summary judgment <u>de novo</u>. <u>Murray</u>, 224 Ill. 2d at 228. Although summary judgment is encouraged as an aid to expedite the disposition of a lawsuit, it is nevertheless "a drastic means of disposing of litigation and, therefore, should be allowed only where the right of the moving party is clear and free from doubt." <u>Bagent v. Blessing Care Corp.</u>, 224 Ill. 2d 154, 163 (2007).

The IIGF argues that the trial court erred by denying its motion for summary judgment and granting Santucci's cross-motion for summary judgment. According to the IIGF, Santucci's claim is not a "covered claim," because Santucci is not a "person insured" under section 534.3(a) of the Insurance Code (215 ILCS 5/534.3(a) (West 2004)), as he was not covered by the Statewide policy. The IIGF concludes, therefore, that it is not obligated to defend Santucci in the underlying case.

"A court's primary objective in construing the language of an insurance policy is to ascertain and give effect to the intentions of the parties as expressed by the language of the policy." <u>Valley Forge Insurance Co. v. Swiderski Electronics, Inc.</u>, 223 Ill. 2d 352, 362 (2006). We give the policy's words their plain, ordinary, and popular meaning. <u>Valley Forge Insurance</u>, 223 Ill. 2d at 366.

Every state in the nation has established an insurance guaranty fund to protect insureds in the event that an insurance company becomes insolvent. <u>Hasemann v. White</u>, 177 Ill. 2d 414, 417 (1997). The IIGF was created as a not-for-profit association designed to limit the losses arising out of insurance companies' insolvencies. <u>Gines v. Ivy</u>, 358 Ill. App. 3d 607, 609 (2005). Every insurance company that is authorized to do business in Illinois is a member of, and contributes to, the IIGF. <u>Hasemann</u>, 177 Ill. 2d at 417.

However, the IIGF limits its obligations only to "covered claims." Section 537.2 of the Insurance Code provides in part:

"The Fund shall be obligated to the extent of the <u>covered claims</u> existing prior to the entry of an Order of Liquidation against an insolvent company and arising within 30 days after the entry of such Order, or before the policy expiration date if less than 30 days after the entry of such Order, or before the insured replaces the policy or on request effects cancellation, if he does so within 30 days after the entry of such Order." (Emphasis added.) 215 ILCS 5/537.2 (West 2004).

Section 534.3(a) defines "covered claim," providing in pertinent part:

" 'Covered claim' means an unpaid claim for a loss arising out of and within the coverage of an insurance policy to which this Article applies and which is in force at the time of the occurrence giving rise to the unpaid claim, including claims presented during any extended discovery period which was purchased from the company before the entry of a liquidation order or which is purchased or obtained from the liquidator after the entry of a liquidation order, made by <u>a person insured under such policy</u> or by a person suffering injury or damage for which a person insured under such policy is legally liable, and for unearned premium ***[.]" (Emphasis added.) 215 ILCS 5/534.3(a) (West 2004).

The Statewide policy was issued to P.S. Coyote, a corporation engaged in the construction business. The Statewide policy defined an insured, in relevant part, as follows:

"If you are designated in the Declarations as:

* * *

(d) an organization other than a partnership, joint venture or limited liability company, you are an insured. Your 'executive officers' and directors are insureds, but

only with respect to their duties as your officers or directors. Your stockholders are also insured[s], but only with respect to their liability as stockholders."

To determine whether an insurer's duty to defend has arisen, a court must compare the allegations of the underlying complaint to the language of the insurance policy. General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co., 215 Ill. 2d 146, 154-55 (2005). The allegations in the underlying complaint must be liberally construed in favor of the insured. General Agents Insurance Co. of America, 215 Ill. 2d at 155. If the allegations fall within, or potentially within, the policy's coverage, the insurer has a duty to defend the insured against the underlying complaint. General Agents Insurance Co. of America, 215 Ill. 2d at 155.

In the instant case, the underlying complaint had two counts: count I alleged that Santucci violated the Domestic Animals Act (510 ILCS 55/1 et seq. (West 2004)). Count II of the complaint alleged generally that Santucci was negligent by failing to: (a) provide an adequate enclosure for the horses; (b) inspect and maintain the enclosure; (c) repair any defects in the enclosure; and (d) erect and maintain sufficiently strong fences that would prevent the horses' escape.

After reviewing Statewide's definition of "insured" and the underlying complaint, we determine that Santucci was not a "person insured" within the meaning of section 534.3(a) of the Insurance Code. 215 ILCS 5/534.3(a) (West 2004). First, the "person insured" under the Statewide policy was P.S. Coyote and, according to the policy, its executive directors and officers with respect to their duties. Second, the complaint names Santucci, individually, but does not name either P.S. Coyote or Santucci in his capacity as an officer or director of the corporation. Third, the horses were owned by Santucci individually, and not by P.S. Coyote. Santucci contends that he was "wearing his corporate hat" when he allegedly left the gate open

allowing the horses to escape. However, this does not change the fact that neither P.S. Coyote nor Santucci, as an officer or director thereof, was named in the complaint.

Citing United States Fidelity & Guaranty Co. v. Wilkin Insulation Co., 144 Ill. 2d 64, 73-74 (1991), for the broad rules applicable to duty-to-defend cases, Santucci argues that the IIGF had a duty to defend because, under the negligence count, it was possible that P.S. Coyote would be named as a defendant. Defendant ignores that we are bound not by the general rules of the duty to defend in insurance law cases, but by the Insurance Code itself, which limits recovery to "covered claims." See 215 ILCS 5/537.2 (West 2004). Therefore, the broad rules of duty-to-defend standards found in United States Fidelity & Guaranty do not apply here.

Next, as a matter of first impression in Illinois, Santucci contends that the IIGF's policy defenses were waived because Statewide accepted Santucci's tender without a reservation of rights and the IIGF also agreed to defend Santucci (albeit subject to a reservation of rights) but then waited 15 months before filing its complaint seeking declaratory relief. Santucci first argues that the IIGF is bound by Statewide's agreement to defend him without a reservation of rights. Santucci correctly notes that, in typical insurance coverage cases, in the absence of a reservation of rights, an insurer waives all questions of policy coverage when it assumes an insured's defense. See American States Insurance Co. v. National Cycle, Inc., 260 Ill. App. 3d 299, 305-06 (1994). However, Santucci ignores that the IIGF is not an insurance company and that Statewide's decision to defend without a reservation of rights does not bind the IIGF. Rather, by statute, the IIGF assumed the policy obligations of Statewide only to the extent that those obligations were statutorily defined "covered claims." See 215 ILCS 5/537.2, 534.3(a) (West 2004). We have already determined that Santucci's claim was not a "covered claim," because he was not a "person insured" under the Insurance Code.

Further, the Insurance Code expressly limits the IIGF's liability as follows:

"The Fund shall not be bound by a settlement, release, compromise, waiver, or final judgment executed or entered within 12 months prior to an order of liquidation and shall have the right to assert all defenses available to the Fund including, but not limited to, defenses applicable to determining and enforcing its statutory rights and obligations to any claim." 215 ILCS 5/537.7(b) (West 2004).

In this case, Statewide assumed the defense of Santucci on or about January 6, 2004, and was found insolvent that same day. Therefore, pursuant to section 537.7(b) of the Insurance Code, the IIGF cannot be bound by any purported waiver, as Statewide's waiver of its reservation of rights fell within the 12 months prior to the order of liquidation. Statewide's failure to reserve its rights does not constitute waiver under established case law or the statute.

We find support for our decision here in the decisions of our sister states. Most state insurance guaranty statutes, including that of Illinois, are very similar to the State Post-Assessment Insurance Guaranty Association Model Bill, proposed by the National Association of Insurance Commissioners. See Urban v. Loham, 227 Ill. App. 3d 772, 776 (1992); 19A J. Appleman & J. Appleman, Insurance Law & Practice §10801, at 365 n.2 (1982). Accordingly, in a construction of the IIGF provisions, decisions of other states construing similar laws are entitled to respect and consideration. Loham, 227 Ill. App. 3d at 776. With this in mind, we consider Lopez v. Texas Property & Casualty Insurance Guaranty Ass'n, 990 S.W.2d 504 (Tex. App. 1999).

In Lopez, an insurer assumed the defense of a driver of a vehicle through the time of judgment, and then the insurance company was placed in liquidation. Lopez, 990 S.W.2d at 505. The insurer never issued a reservation of rights, and the insured argued that the Texas Guaranty

Association was estopped from denying coverage, because the insurer had waived its reservation of rights. Lopez, 990 S.W.2d at 505. The Court of Appeals of Texas held that, under general contract law, waiver would have occurred; however, pursuant to the Texas Insurance Code, there could be no coverage, because the insured was not a covered person. Lopez, 990 S.W.2d at 506. Thus, the Texas Insurance Code prevailed over general insurance contract waiver rules. Lopez, 990 S.W.2d at 506.

Like Lopez, we determine that article XXXIV of the Insurance Code, containing the IIGF provisions (215 ILCS 5/532 et seq. (West 2004)), prevails over general insurance contract waiver rules. Therefore, Santucci's waiver argument is not applicable in this IIGF case.

Nor do the IIGF's own acts--agreeing to defend Santucci and conducting that defense for over a year--constitute waiver under established general insurance case law. The IIGF agreed to defend Santucci's claim under a reservation of rights. It is axiomatic that, where an insurer agrees to defend an insured under a reservation of rights, it preserves its right to seek a declaratory judgment denying coverage. IMC Global v. Continental Insurance Co., 378 Ill. App. 3d 797, 809 (2007). In such a case, estoppel cannot apply to the insurer. See IMC Global, 378 Ill. App. 3d at 809. In this case, the IIGF agreed to defend Santucci under a reservation of rights. Therefore, under general insurance law, it cannot be estopped from asserting its defenses.

Lastly, Santucci contends that a conflict of interest between him and the IIGF estops the IIGF from abandoning its defense of him. Santucci contends that, when the IIGF filed its declaratory judgment action, it was obligated to advise him to file a contribution claim against P.S. Coyote. According to Santucci, a conflict arose because, although it was in his interest to file a contribution claim, doing so would have been averse to the interest of the IIGF, which

would have had to defend the claim. Santucci concludes that the IIGF's failure to advise him of his rights now estops it from denying coverage.

The IIGF asserts, however, that there was no proper basis for any such contribution claim. Santucci does not contend otherwise, instead saying only that the propriety of any such claim "is an issue to be decided by the trial court in the State Farm lawsuit." We fail to see how Santucci can fault the IIGF for failing to advise him to file a claim when he cannot say that the claim would have been proper. In any event, Santucci cites no relevant authority in support of his argument, and thus we address it no further. See 210 Ill. 2d R. 341(h)(7).

Because there are no genuine issues of material fact and the IIGF is entitled to judgment as a matter of law, we reverse the trial court's order granting summary judgment in Santucci's favor and denying the IIGF's summary judgment motion.

For these reasons, the judgment of the circuit court of Kane County is reversed.

Reversed.

GILLERAN JOHNSON, P.J., and GROMETER, J., concur.