CONNECTICUT INSURANCE GUARANTY
ASSOCIATION *v.* JOSHUA
DROWN ET AL.
(AC 33112)

DiPentima, C. J., and Alvord and West, Js.

---

Argued October 20, 2011—officially released March 13, 2012

*Mark D. Robins,* pro hac vice, with whom was *Thomas P. O'Connor,* for the appellant (plaintiff).

*Sean K. McElligott,* with whom, on the brief, was *David M. Bernard,* for the appellees (defendants).

*Opinion*

DiPENTIMA, C. J. In this appeal, we consider whether the trial court improperly concluded that a professional liability insurance policy covered certain medical malpractice claims brought against a professional corporation under the doctrine of vicarious liability. The plaintiff, Connecticut Insurance Guaranty Association (association), appeals from the judgment of the trial

court granting the cross motion[1] for summary judgment filed by the defendants, Susan Drown and Rodney Drown, individually and on behalf of their minor son, Joshua Drown,[2] and Associated Women's Health Specialists, P.C. (Health Specialists). On appeal, the association argues that the court improperly concluded that (1) an exclusion to the policy issued by Medical Inter-Insurance Exchange (Exchange) did not apply and (2) the association was estopped from enforcing the policy provisions.[3] We reverse the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The association is a nonprofit unincorporated legal entity created pursuant to the

[1] The association also argues that the court's judgment should be reversed and remanded with direction to grant its motion for summary judgment. The denial of a motion for summary judgment is not a final judgment and is not ordinarily appealable. *Levine* v. *Advest, Inc.*, 244 Conn. 732, 756, 714 A.2d 649 (1998). Interlocutory rulings may be reviewed, however, in an appeal taken from a final judgment in the case. *Blue Cross/Blue Shield of Connecticut, Inc.* v. *Gurski*, 49 Conn. App. 731, 733–34, 715 A.2d 819, cert. denied, 247 Conn. 920, 722 A.2d 809 (1998).

Our courts have reviewed the denial of a motion for summary judgment after a cross motion for summary judgment was granted, so long as such review would not require the resolution of substantive issues that were not addressed by the trial court. See *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 295 n.12, 596 A.2d 414 (1991); compare *Washington* v. *Ivancic*, 113 Conn. App. 131, 132 n.2, 965 A.2d 618 (2009); *Westbrook* v. *ITT Hartford Group, Inc.*, 60 Conn. App. 767, 774–75, 761 A.2d 242 (2000). Here, the court rendered summary judgment on the ground that the policy covered the underlying claims and that the association was statutorily obligated to pay these claims. This ruling directly addresses the arguments set forth in the association's motion. Because our review will not require the resolution of any issues not addressed by the trial court, we conclude that this claim is reviewable.

[2] We refer in this opinion to Joshua Drown, Susan Drown and Rodney Drown collectively as the Drowns.

[3] The association also claims that the court improperly concluded that it was statutorily obligated to pay three "covered claims" to the Drowns. Specifically, the association argues that the court improperly (1) concluded that the underlying claims were "covered claims" even though there was no judgment in the underlying action, as required by the policy, (2) held that it failed to comply with General Statutes § 38a-851 (a) and (3) denied its motion to reargue. Because our conclusion that the underlying claims

Connecticut Insurance Guaranty Association Act (guaranty act), General Statutes § 38a-836 et seq., and its purpose is to provide compensation for policyholders and claimants whose remedy otherwise would be unavailable by virtue of insurer insolvency. General Statutes §§ 38a-839 and 38a-841; see *Connecticut Ins. Guaranty Assn.* v. *State*, 278 Conn. 77, 86, 896 A.2d 747 (2006). In May, 2000, the Drowns filed the underlying medical malpractice action against Health Specialists and two physicians, France Bourget and Richard Holden. The Drowns alleged that Bourget and Holden failed to diagnose a placental abruption resulting in brain damage to Joshua Drown, and physical injuries to Susan Drown. The Drowns also alleged that Health Specialists was liable vicariously for the physicians' alleged malpractice.

From 2000 to 2001, Health Specialists was insured through a professional liability insurance policy issued by Exchange (policy). There was no dispute that Health Specialists turned the underlying malpractice claims over to Exchange in a timely manner in 2000. Without asserting a reservation of rights, Exchange provided counsel to Health Specialists to defend the underlying malpractice action. In September, 2006, however, the counsel provided by Exchange failed to participate in pretrial mediation scheduled by the court. In October, 2006, by letter to Health Specialists, Exchange denied coverage of the claims, asserting that exclusion (i) of the policy applied. This provision excludes coverage for the insured "corporation/partnership under Coverage Agreement B with respect to injury arising solely out of acts or omissions in the rendering or failure to render professional services by individual physicians or nurse anesthetists, or by any paramedical for whom a premium charge is shown on the declarations page." In

are not "covered claims" within the meaning of General Statutes § 38a-838 (5) is dispositive, we need not address these arguments.

December, 2006, Exchange failed to attend or send counsel to a second court-ordered pretrial mediation in the underlying action. The court then rendered a default judgment against Health Specialists. In March, 2007, Susan Drown, individually and on behalf of Joshua Drown, and Health Specialists executed a settlement agreement whereby Health Specialists agreed to pay the amount of the policy, $2 million, and Susan Drown, individually and on behalf of Joshua Drown, agreed not to proceed directly against the assets of Health Specialists.[4] The court then dismissed the underlying action against Health Specialists.[5]

In April, 2008, a United States Bankruptcy Court in New Jersey declared Exchange insolvent, and ordered that it be liquidated. By virtue of Exchange's insolvency, the association became obligated to pay certain "covered claims" arising out of and within the coverage of the policy pursuant to the guaranty act.[6] In February,

---

[4] The underlying action was withdrawn as to Holden before Susan Drown and Health Specialists executed the settlement agreement. There is no record before us as to how, or whether, the action against Bourget was terminated. We note, however, that the settlement agreement provides that Susan Drown, individually and on behalf of Joshua Drown, and Health Specialists agree to "waive and relinquish all costs and all rights to any further proceedings in connection with the [s]uit," which named Bourget as a defendant. Additionally, the settlement agreement provides that Susan Drown, individually and on behalf of Joshua Drown, may be paid "only pursuant to the 'Assignment of Rights.' " The assignment clause assigned to Susan Drown, individually and on behalf of Joshua Drown, all of Health Specialist's rights to recover against Exchange.

[5] The court stated that Exchange and Health Specialists entered into a stipulated judgment. In fact, the underlying action was dismissed pursuant to Practice Book § 14-19, which provides in relevant part that "[a]ny case that does not proceed to trial because it has been reported to the judicial authority as having been settled shall be withdrawn . . . ."

[6] Section 38a-838 (5) provides in relevant part: " 'Covered claim' means an unpaid claim, including, but not limited to, one for unearned premiums, which arises out of and is within the coverage and subject to the applicable limits of an insurance policy to which sections 38a-836 to 38a-853, inclusive, apply issued by an insurer, if such insurer becomes an insolvent insurer after October 1, 1971 . . . ."

2009, the association brought a declaratory judgment action, pursuant to General Statutes § 52-29, to determine the rights and obligations of the parties under General Statutes § 38a-838 (5) with respect to the underlying claims. In June, 2009, the association filed a motion for summary judgment on the ground that exclusion (i) of the policy precluded coverage of the underlying claims. The defendants filed a cross motion for summary judgment on the grounds that the underlying claims were covered under the policy and that the association was obligated statutorily to pay three covered claims to the Drowns in the amount of $1,199,700.[7] The court denied the association's motion for summary judgment and granted the defendants' cross motion for summary judgment. The association filed a motion to reargue or for reconsideration, which was denied. This appeal followed.

Our standard of review is well settled. "In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite

---

[7] The defendants' brief explains that the underlying complaint "states three claims against [Health Specialists] for negligence—one each on behalf of Susan, Rodney, and Joshua Drown." Section 38a-841 (a) (1) limits the association's obligation to pay "covered claims" under § 38a-838 (5) as follows: "(B) with respect to covered claims other than for unearned premiums, such obligation shall include only that amount of each such claim which is in excess of one hundred dollars and is less than . . . four hundred thousand dollars for claims arising under policies of insurers determined to be insolvent on or after October 1, 2007 . . . ." Here, Exchange was determined to be insolvent in April, 2008. The $1,199,700 total calculates to $399,900 per covered claim, and is therefore within the statutory limits prescribed.

clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Employers Reinsurance Corp.* v. *Muro*, 86 Conn. App. 551, 554, 861 A.2d 1216 (2004), cert. denied, 273 Conn. 907, 868 A.2d 747 (2005). Therefore, we must determine "whether the court's conclusions are legally and logically correct and are supported by the record." (Internal quotation marks omitted.) *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 252, 819 A.2d 773 (2003).

I

The association argues that the court improperly concluded that exclusion (i) of the policy did not apply. Specifically, the association argues that exclusion (i) unambiguously excludes coverage in the present case. We agree with the association.

We first set forth the legal principles governing the construction of insurance policies. "[C]onstruction of a contract of insurance presents a question of law for the court which this court reviews de novo. . . . It is the function of the court to construe the provisions of the contract of insurance. . . . The [i]nterpretation of an insurance policy . . . involves a determination of the intent of the parties as expressed by the language of the policy . . . [including] what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . [A] contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy . . . [giving the] words . . . [of the policy] their natural and

ordinary meaning . . . [and construing] any ambiguity in the terms . . . in favor of the insured . . . . In determining whether the terms of an insurance policy are clear and unambiguous, [a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading." (Citation omitted; internal quotation marks omitted.) *Auto Glass Express, Inc.* v. *Hanover Ins. Co.*, 293 Conn. 218, 231–32, 975 A.2d 1266 (2009). "The fact that the parties advocate different meanings of the exclusion clause does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, 259 Conn. 527, 545, 791 A.2d 489 (2002).

Section I of the policy, entitled "Coverage Agreements," lists three types of coverage: "Coverage A–Individual Professional Liability"; "Coverage B–Corporate/Partnership Liability"; and "Coverage C–Paramedical Employee Liability." With respect to Coverage B, § I provides in relevant part: "[Exchange] will pay on behalf of the insured all sums that the insured shall become legally obligated to pay as damages because of . . . [i]njury arising out of the rendering of or failure to render . . . professional services by any person for whose acts or omissions the corporation/partnership insured is legally responsible."[8] Section II of the policy outlines the exclusions from coverage. As noted previously, exclusion (i) of § II excludes coverage for the insured "corporation/partnership under Coverage

[8] The court stated that "[the association] has conceded in this action that the actions of [Bourget] are 'professional services' and that [Bourget] is a person for whose acts or omissions [Health Specialists] is legally responsible." It is also undisputed that Holden is a physician for whose acts or omissions Health Specialists is legally responsible.

Agreement B with respect to injury arising solely out of acts or omissions in the rendering or failure to render professional services by individual physicians or nurse anesthetists, or by any paramedical for whom a premium charge is shown on the declarations page."

In the present case, the court concluded that the policy language in exclusion (i) was ambiguous because the association reasonably read the exclusion as limiting Exchange's obligation to pay damages, while the defendants adopted a reasonable, but more expansive reading of the policy language, which would encompass claims made against physicians employed by Health Specialists. The court further determined that the ambiguous language in exclusion (i) should be construed in favor of the insured, explaining that the "purpose of the policy was to provide coverage to the corporate entity, [Health Specialists], for the acts or omissions of its physicians and other medical personnel." Finally, the court concluded that the claims asserted by the Drowns in the underlying malpractice action constituted "covered claims" under the policy. With this background in mind, we turn our attention to the association's claim.

A

First, the association argues that the court improperly determined that the phrase "for whom a premium charge is shown on the declarations page" in exclusion (i) modified the phrase "individual physicians." The court concluded that because Bourget's name did not appear on the declarations page, exclusion (i) did not apply to the underlying claims. "In approaching the problem of discerning and resolving ambiguity, it is useful to recognize that the origin of the problem lies, in large part, in the nature of words and the language they compose. As Justice Holmes wrote, [a] word is not a crystal, transparent and unchanged, it is the skin

of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used. . . . In addition, [t]he English language, with its immense vocabulary, its paucity of inflections, its thousands of homonyms, its flexible grammar and loose syntax, offers endless danger of (or opportunity for) ambiguity." (Citation omitted; internal quotation marks omitted.) *DeWitt* v. *John Hancock Mutual Life Ins. Co.*, 5 Conn. App. 590, 594, 501 A.2d 768 (1985). We will not read the policy language, however, in such a way as to "ignore common rules of grammar." *Gaynor Electric Co.* v. *Hollander*, 29 Conn. App. 865, 870, 618 A.2d 532 (1993).

Exclusion (i), as noted previously, provides that coverage under Coverage Agreement B does not apply "with respect to injury arising *solely* out of acts or omissions in the rendering or failure to render professional services by individual physicians *or* nurse anesthetists, *or by* any paramedical for whom a premium charge is shown on the declarations page." (Emphasis added.) The use of a comma, the repeated use of the disjunctive conjunction "or" and the repeated use of the word "by" grammatically separates the portion of exclusion (i) referring to individual physicians and nurse anesthetists from the portion of exclusion (i) referring to paramedicals. In light of this separation, we read the phrase "for whom a premium charge is shown on the declarations page" to modify only the "paramedical" category. "It is well recognized that, whenever possible, a modifier should be placed next to the word it modifies." *Harris Data Communications, Inc.* v. *Heffernan*, 183 Conn. 194, 197, 438 A.2d 1178 (1981). Moreover, "the use of the disjunctive conjunction 'or' unambiguously requires that *either* of the exclusions separated by the conjunction, if applicable, excludes coverage. See, e.g., *State* v. *Pascucci*, 164 Conn. 69, 72, 316 A.2d 7520 [1972] ('use of disjunctive

"or" between the two parts of the statute indicates a clear legislative intent of separability')." (Emphasis added.) *Horak* v. *Middlesex Mutual Assurance Co.*, 181 Conn. 614, 616–17, 436 A.2d 783 (1980); accord *Flint* v. *Universal Machine Co.*, 238 Conn. 637, 645, 679 A.2d 929 (1996).

In addition, we agree with the association that the last antecedent rule applies. The last antecedent rule provides that qualifying phrases, absent a contrary intention, refer solely to the last antecedent in a sentence. *Eagle Hill Corp.* v. *Commission on Hospitals & Health Care*, 2 Conn. App. 68, 75, 477 A.2d 660 (1984); 2A N. Singer & J. Singer, Sutherland Statutory Construction (7th Ed. 2007) § 47:33, p. 487; compare *State* v. *Rodriguez-Roman*, 297 Conn. 66, 76 and n.7, 3 A.3d 783 (2010) (qualifying phrase in statute applied to all antecedents where phrase set off by commas, indicating that exception to last antecedent rule was warranted). Here, the phrase "for whom a premium charge is shown on the declarations page" is not grammatically or logically separated from the last antecedent phrase "any paramedical." Accordingly, we conclude that the last antecedent rule applies, and we will interpret the phrase to apply only to the last antecedent, "any paramedical."[9]

---

[9] We note that our conclusion that the phrase "for whom a premium charge is shown on the declarations page" in exclusion (i) applies only to paramedical employees is supported by the policy's definition of an "insured" person. Section III defines insured persons as follows: "(a) under Coverage A, any individual named in the declarations page as insured; (b) under Coverage B, any partnership identified in the declarations page, and any member thereof with respect to acts or omissions of others; (c) under Coverage B, any corporation named in the declarations page, and any executive officer, director or shareholder thereof while acting within the scope of his duties as such with respect to acts or omissions of others; (d) under Coverage C, any employee of an insured under Coverage A or Coverage B for whom a premium charge is shown in the declarations page." As we noted previously, Coverage C applies coverage for paramedical employee liability. Thus, the fact that only subsection (d) of § III requires that a premium charge be shown on the declarations page is consistent with our conclusion that the identical phrase in exclusion (i) only applies to paramedicals.

Therefore, the court improperly concluded that there was no genuine issue of material fact that exclusion (i) was inapplicable due to the absence of Bourget's name on the declarations page. Because we conclude that the phrase "for whom a premium charge is shown on the declarations page" in exclusion (i) does not apply to individual physicians, we also conclude that there is no genuine issue of material fact that exclusion (i) applies in the present case.

## B

Second, the association argues that the court erroneously concluded that the word "solely" rendered exclusion (i) ambiguous.[10] The defendants respond that the association's interpretation of the exclusion renders the policy illusory.[11] We agree with the association.

Here, the trial court stated that "[i]n the amended revised complaint, very similar malpractice claims were asserted against [Holden]. Accordingly, based on the allegations in the amended revised complaint, [Bourget] was not solely the cause of the injuries claimed in the underlying action." Exclusion (i) applies to injuries "arising solely out of acts or omissions in the rendering

---

[10] The association also argues that only the acts or omissions of Bourget are at issue because the action against Holden was withdrawn. We need not address this argument because we conclude that, even assuming that the acts or omissions of both physicians were at issue, exclusion (i) unambiguously excludes coverage in the present case.

[11] The defendants argue that because physicians must be individually insured before corporate coverage can apply, the association's argument renders coverage illusory. Section VIII (g) of the policy provides in relevant part: "The coverage provided under this policy shall not apply to any individual, partnership or corporation insured with respect to claims arising out of the acts or omissions of: (a) physician or nurse anesthetist employees . . . unless such persons have individual coverage . . . with limits of liability equal to or greater than the limits of liability of the insured under this policy." Section VIII (g) does not, however, automatically apply corporate coverage when physicians are individually insured; rather, it creates a condition precedent for such coverage. Thus, the language of exclusion (i), when read in connection with § VIII (g), does not render coverage illusory.

or failure to render professional services by individual *physicians* . . . ." (Emphasis added.) The use of the plural form of the word "physician" indicates that exclusion (i) could apply even if the underlying claims arose out of the acts or omissions of more than one physician. Moreover, our determination that exclusion (i) applies, even assuming that the acts or omissions of both Bourget and Holden were at issue, does not compel the conclusion that coverage is illusory. The association, in its reply brief, listed a number of hypothetical scenarios where exclusion (i) would not apply. The association, for example, stated: "Thus, if an injury arises partially out of the acts or omissions of a physician and partially out of the acts or omissions of a non-scheduled paramedical, then exclusion (i) would not apply."

"[A]lthough we adhere to broad interpretation standards in construing insurance policies, we conclude that the allegations in the . . . complaint do not fall even possibly within the coverage . . . ." (Internal quotation marks omitted.) *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, 256 Conn. 343, 376, 773 A.2d 906 (2001). Although exclusion (i) places limits on coverage, that does not mean it eviscerates all coverage under the policy. "The reason for or purpose of an exclusion clause in a policy is to eliminate from coverage *specified losses* . . . which except for the exclusion clause would remain under the coverage. . . . [T]he word exclusion signifies . . . circumstances in which the insurance company will not assume liability for a *specific risk or hazard* that otherwise would be included within the general scope of the policy." (Citations omitted; emphasis added; internal quotation marks omitted.) *Hammer* v. *Lumberman's Mutual Casualty Co.*, 214 Conn. 573, 588–89, 573 A.2d 699 (1990). Accordingly, our review of the plain language of the policy leads us to conclude that the grant of coverage in Coverage B is broader than the exclusion and is not illusory.

Our conclusion that coverage is not illusory also is supported by recent cases from other jurisdictions also interpreting exclusion (i) of the policy. See *Valentin-Rivera* v. *New Jersey Property-Liability Ins. Guaranty Assn.*, Docket No. A-1925-09T1 (N.J. Super. App. Div. March 25, 2011) (interpreting same exclusion, held coverage not illusory where action was brought against two physicians, even though action against one physician ended by settlement, because only physicians, nurse anesthetists and paramedics were excluded, and coverage could be provided if acts of other staff were at issue); *Massachusetts Insurers Insolvency Fund* v. *Mountzuris*, Docket No. 08-1962-B (Mass. Super. April 21, 2009) (held same exclusion excluded coverage, coverage not illusory because exclusion only eliminates coverage where injury arises *solely* out of acts or omissions by persons identified in provision).

Therefore, the court improperly determined that there was no genuine issue of material fact that the word "solely" in exclusion (i) rendered the policy ambiguous where the actions of multiple physicians were at issue. Moreover, we conclude that, in light of our conclusion that exclusion (i) is not ambiguous in the present case, there is no genuine issue of material fact that exclusion (i) applies.

C

Finally, our decision is consistent with our Supreme Court's recent decision in *Johnson* v. *Connecticut Ins. Guaranty Assn.*, 302 Conn. 639, 31 A.3d 1004 (2011), issued after oral argument in this case. In *Johnson*, the plaintiffs brought a declaratory judgment action seeking a determination that "certain medical malpractice claims that they had asserted in an action against the [insured], were covered under an insurance policy issued to [the insured] by [Exchange]." Id., 640. The association assumed liability for Exchange's obligations

to the extent that claims were covered under the guaranty act. Id., 640–41. The association brought a counterclaim for a declaratory judgment, alleging that the claims were excluded under exclusion (i). Id., 641. The claims in *Johnson* were "predicated on the acts of one of its nurse practitioners, Kathy Hoffman," a "paramedical" within the meaning of exclusion (i). Id., 641, 645. The declarations page did not list Hoffman as a named insured nor did it indicate a specific premium charge for paramedicals in general. Id., 642. Instead, the declarations page stated "included" under the "premium" column corresponding to "Coverage C—Paramedical Employee Liability." Id.

Our Supreme Court concluded that "the pertinent policy terms are ambiguous and, therefore, must be construed in favor of coverage." Id. The court emphasized that its disposition turned on the meaning of the phrase "by any paramedical for whom a premium charge is shown on the declarations page" in exclusion (i), in connection with the declarations page. Id., 645. The court concluded that even if it accepted the association's argument that exclusion (i) applied to paramedicals as a class, "a layperson reasonably could understand the phrase 'premium charge . . . shown on the declarations page' to mean that a specific amount has been assessed for coverage of paramedical employees and that this specific amount will be evident on a declarations page." Id., 649. In the absence of a specific amount listed on the declarations page, the court construed the policy in favor of coverage. Id., 652.

Here, we consider whether the phrase "for whom a premium charge is shown on the declarations page" in exclusion (i) modifies only the paramedical category, or whether it also applies to individual physicians and nurse anesthetists. We also consider whether the exclusion is ambiguous even assuming that the acts or omissions of multiple physicians are in question. These

issues were not before the court in *Johnson*. Our analysis, moreover, does not involve the interpretation of conflicting policy provisions that, read together, render the exclusion ambiguous under the facts presented. In *Johnson*, by contrast, the court concluded that exclusion (i), read *"in connection with the declarations page,"* was ambiguous because no specific premium charge was shown on the declarations page. (Emphasis added.) Id., 645. See *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, supra, 263 Conn. 268–71 (concluding that policy excluded coverage where no ambiguity was created by conflicting language within policy). Thus, because of the distinct legal issues before us, we conclude that the *Johnson* decision does not control our analysis.[12]

We therefore conclude, for the foregoing reasons, that exclusion (i) unambiguously excludes coverage of the claims asserted by the Drowns.

## II

The association also claims that the court improperly concluded that it was estopped from enforcing the policy provisions due to Exchange's breach of its duty to defend Health Specialists. The court determined that the association is "liable to the same extent that [Exchange] would have been liable for breaching its

---

[12] In reaching this conclusion, we have received and considered letters from both parties, pursuant to Practice Book § 67-10, discussing the relevance of the *Johnson* decision to our analysis. Counsel for the defendants argues that *Johnson* is relevant because the court in *Johnson* concluded that exclusion (i) was ambiguous "with respect to a different but analogous coverage issue." Counsel for the association counters that *Johnson* has no relevance to the present case and, to the extent the decision *does* have any relevance, it is found in the court's differentiation of the words "any paramedical for whom a premium charge is shown on the declarations page" from the preceding words in exclusion (i). As we explained in the main text, we conclude that the present case is distinguishable from *Johnson* due to the distinct legal issues and factual circumstances of this case.

duty to defend covered claims under its policy." We agree with the association.

The association's claim is one of statutory interpretation over which our review is plenary. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Connecticut Ins. Guaranty Assn.* v. *State*, supra, 278 Conn. 82.

As we have noted, § 38a-838 (5) defines a "covered claim" as an "unpaid claim, including, but not limited to, one for unearned premiums, which *arises out of and is within the coverage and subject to the applicable limits of an insurance policy* . . . ." (Emphasis added.) Additionally, § 38a-841 (a) (4) provides in relevant part that the association shall "pay covered claims to the extent of said association's obligations, and deny all other claims." "[I]n general, the legislative objective was to make the [association] liable to the same extent that the insolvent insurer would have been liable *under its policy*." (Emphasis added; internal quotation marks

omitted.) *Connecticut Ins. Guaranty Assn.* v. *Fontaine*, 278 Conn. 779, 791, 900 A.2d 18 (2006); id., 792 (where exclusion was ambiguous, doctrine of contra proferentum applied even though ultimate payer would be guaranty association). Thus, the association can only be held liable for claims arising within the coverage of the policy itself.[13] See *Franklin* v. *Superior Casting*, 302 Conn. 219, 227, 24 A.3d 1233 (2011) ("[o]ur case law firmly establishes that the association's liability is dictated exclusively by the guaranty act"); *Potvin* v. *Lincoln Service & Equipment Co.*, 298 Conn. 620, 644, 6 A.3d 60 (2010) ("definition of 'covered claim' limits the association's obligations to those found in the insolvent insurer's insurance policy and does not extend to liabilities arising from conduct in handling the claim if such a provision is not included in the policy").

Our conclusion is consistent with both the plain language and the purpose of the guaranty act. "The association was established for the purpose of providing a *limited form of protection* for policyholders and claimants in the event of insurer insolvency. . . . Because . . . insurers may pass on the costs of the assessments made against them by the association, it is in reality

---

[13] Other jurisdictions have also held that guaranty associations are not liable for claims that do not arise from the coverage of the policy at issue. See *Valentin-Rivera* v. *New Jersey Property-Liability Ins. Guaranty Assn.*, supra, Docket No. A-1925-09T1 (N.J. Super. App. Div. March 25, 2011) (guaranty association not estopped from disclaiming coverage even though insurer did not reserve its rights in underlying action); *Illinois Ins. Guaranty Fund* v. *Santucci*, 384 Ill. App. 3d 927, 934, 894 N.E.2d 801 (2008) (same); *Benson* v. *New Hampshire Ins. Guaranty Assn.*, 151 N.H. 590, 598, 864 A.2d 359 (2004) (guaranty association had no duty to act as insolvent insurer beyond covered claims); *Crider* v. *Georgia Life & Health Ins. Guaranty Assn.*, 188 Ga. App. 407, 409, 373 S.E.2d 30 (1988) (guaranty association not liable for bad faith penalties against insurer). Our courts have held that "[s]ister state decisions are helpful in construing and applying the guaranty act because it is based on a model statute drafted by the National Association of Insurance Commissioners that has been adopted in substantial part by the legislatures of many of our sister states . . . ." (Internal quotation marks omitted.) *Connecticut Ins. Guaranty Assn.* v. *Fontaine*, supra, 278 Conn. 792 n.8.

policyholders who pay for the protections afforded by the association. Limitations on the association's obligations, therefore, provide another form of protection against increased premiums for policyholders in addition to the primary protection afforded all claimants against losses resulting from insurer insolvency. The legislative history confirms that the association was *established for the benefit of consumers*. At the public hearing held prior to passage of the bill proposing the creation of the association, Peter Kelly, a member of the state insurance department stated: [T]his bill provides the means to avoid financial loss to Connecticut residents because of the insolvency of [insurance companies]. . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) *Hunnihan* v. *Mattatuck Mfg. Co.*, 243 Conn. 438, 451–52, 705 A.2d 1012 (1997). Holding the association liable for claims not arising out of the policy itself would strain § 38a-838 (5) beyond its intended purpose. Because we conclude that exclusion (i) applies, the underlying claims are not "covered claims" within the meaning of § 38a-838 (5). Accordingly, the court improperly determined that there was no genuine issue of material fact that the association was estopped from enforcing the policy provisions. Our analysis also leads us to conclude that, as a matter of law, the association is not estopped from enforcing the policy provisions.

The judgment is reversed and the case is remanded with direction to deny the defendants' cross motion for summary judgment, to grant the association's motion for summary judgment and to render judgment thereon for the association.

In this opinion the other judges concurred.